**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANTHONY ROBINSON | : | No. 13-232 |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                    **September 8, 2014**

Defendant Anthony Robinson is charged with two counts of Hobbs Act robbery, 18
U.S.C. § 1951(a), and two counts of using and carrying a firearm during and in relation to a
crime of violence, 18 U.S.C. § 924(c). Defendant claims police arrested him without probable
cause in violation of the Fourth Amendment and therefore moves to suppress evidence seized
after that arrest, specifically his clothes and shoes, as well as a photograph of him taken by the
police. He also moves to suppress out-of-court identifications that were allegedly obtained in
violation of his Fifth Amendment rights. The Court held a suppression hearing on September 2,
2014. For the following reasons, the Court denies the motion.


**I.      BACKGROUND**

Defendant's charges arise out of two armed robberies, both of which occurred on the
evening of December 1, 2012. (Def.'s Mot. to Suppress at 2.) The first robbery was at a Subway
restaurant in Center City, Philadelphia and the second was at an Anna's Linens store in
Germantown, Philadelphia. (*Id.*)

During the first robbery, a man walked into the Subway, which was otherwise empty, and
ordered a sandwich. (*Id.*) The Subway employee working that evening, J.H., made the sandwich

and the man paid for it. (*Id.*) The man then pulled out a black handgun and said "Can you do me one more favor? Hand me the money." (*Id.*) J.H. credibly testified at the suppression hearing that the man was approximately two feet away from her, they were the only two people in the restaurant, his face was uncovered, and she got a good look at his face before and during the robbery. (Tr. of Hr'g on Mot. to Suppress [Tr.] at 11-12, 24.) J.H. gave him the money in the cash register and he asked her if she knew the combination to the safe. (*Id.* at 10.) J.H. said she did not and he threatened to hurt her if she was lying. (*Id.*) He then left the restaurant. (*Id.*)

J.H. called the police. (Def.'s Mot. to Suppress at 2.) J.H. gave the officer who responded to the scene a description of the robber: he was a black male, about 35-40 years old, about 5'8", thin build, with salt and pepper hair and a beard. (*Id.* at 2-3.) J.H. stated that the robber was wearing a black skull cap, a black and gray hooded sweatshirt with lettering on the front, gray jeans, and black and white New Balance sneakers. (*Id.* at 3.) J.H. also went to the police station and gave a written statement describing the robber to Detective Gino Andracchio. (Tr. at 13.)

The robbery at Anna's Linens occurred a few hours later. (Def.'s Mot. to Suppress at 3.) A man walked into the mostly empty store and bought a pillow. (*Id.*; Gov't Mot. in Resp. at 2.) The man then displayed a black handgun in his waistband and said to the clerk, "Can you do me a favor, give me all your money in the register." (Def.'s Mot. to Suppress at 2.) The clerk, E.L., handed over the money. (*Id.*) About an hour after the robbery, E.L. gave the police the following description of the suspect: dark-complected, black male, with a goatee with gray hairs, between 5'7" and 5'9", thin, and in his forties. (*Id.*; Tr. at 57-58.) E.L. further stated that the suspect, "wore a shiny green Eagles jacket, a knit Eagles hat, and gray or black sweat pants." (Def.'s Mot. to Suppress at 2; Tr. at 57-58.) The police obtained surveillance footage of this incident. (Gov't Mot. in Resp. at 2.)

J.H. testified that on the day following the robberies, she was in a car with her wife and another person, near the intersection of 10th and Wagner Streets in Philadelphia, when she spotted Defendant on the street and identified him as the robber. (Tr. at 14.) She testified credibly that she recognized his face and noticed that he was wearing the same clothes that the robber had worn the night before. (*Id.* at 16.) J.H. called Detective Andracchio and told him she had spotted the robber on the street. (*Id.* at 15.) She gave a description of Defendant over the phone. (*Id.* at 26-27.) Defendant got into a black Cadillac Escalade and J.H. followed him closely, without losing sight of the car. (*Id.* at 16-17, 31.) J.H. stayed on the phone with Detective Andracchio the whole time, giving him locational updates as well as a description of the car and its license plate number. (*Id.* at 17.)

J.H. saw the Escalade get pulled over by a police cruiser. (*Id.*) She saw a police officer take Defendant out of the Escalade, handcuff him, and put him in a police cruiser. (*Id.* at 17, 32.) J.H. confirmed to a uniformed officer that she identified Defendant as the man who had robbed her. (*Id.* at 17.)

Philadelphia Police Officer Timothy Auty testified credibly that on December 2, 2012, while on duty in North Philadelphia, he heard a report by Detective Andracchio on his police radio that a victim of an armed robbery had identified a suspect on the street, followed by a description of the car, the suspect, and the location. (*Id.* at 35-36.) He drove his cruiser to the location—close to the intersection of 10th and Duncannon Streets—found an Escalade matching the description and license plate number he had heard over the radio, pulled behind it and initiated the stop. (*Id.* at 35-36, 40-41.) Because the Escalade had tinted windows, the suspect was wanted for armed robbery, and Officer Auty was alone, he pulled his gun and pointed it at the ground for his safety as he approached the Escalade. (*Id.* at 38-39, 41-42.) When he saw

Defendant raise his hands and step out of the car, Officer Auty holstered his gun, frisked Defendant, handcuffed him, and put him in the back of his cruiser. (*Id.* at 38, 42-43.) After hearing that J.H. had confirmed her identification of Defendant, Officer Auty officially arrested Defendant and took him back to the stationhouse for booking. (*Id.* at 38.) Because J.H. had identified Defendant as wearing the same clothes as the robber, police seized Defendant's clothes and shoes and also took his photograph. (Def.'s Mot. to Suppress at 5.)

Detective Mark Flacco testified credibly as follows: He was the officer in charge of investigating the robbery at Anna's Linens. (Tr. at 49.) He viewed the surveillance video from both the Anna's Linens and the Subway robberies and testified that the robber appeared to be the same in each video and the robbery method was very similar. (*Id.* at 51, 59-60.) Based on the video from Anna's Linens, Detective Flacco testified that E.L. had ample opportunity to view the robber before and during the robbery. (*Id.* at 58-59.) With the picture taken at Defendant's arrest, Detective Flacco created a photo array to show to E.L. (*Id.* at 53-54.) The array, which Detective Flacco created by inputting biometrics corresponding to the description of the robber into a computer program, contained eight photos of black men with facial hair. (*Id.* at 53, 61-63; Gov't Exh. 1.) E.L. picked Defendant out of the array without hesitation and without prompting from Detective Flacco. (*Id.* at 57.)

## II.    STANDARD OF REVIEW

On a motion to suppress, the movant bears the burden of establishing a violation of his constitutional rights by a preponderance of the evidence. *See Rakas v. Illinois*, 439 U.S. 128, 132 n.1 (1978); *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995); *United States v. Acosta*, 965 F.2d 1248, 1257 n.9 (3d Cir. 1992). Once the defendant establishes that the police conducted

a warrantless search, however, the burden shifts to the government to show that the search was reasonable. *Johnson,* 63 F.3d at 245.

## III.    DISCUSSION

### a.  Fourth Amendment Claim

Defendant first argues that he was arrested without probable cause, in violation of the Fourth Amendment. The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures." U.S. Const., amend. IV.

Stopping a car and detaining its occupants is a "seizure" and, therefore, is subject to protections of the Fourth Amendment, including a requirement of reasonableness under the circumstances. *United States v. Hensley,* 469 U.S. 221, 226 (1985); *see also California v. Hodari D.*, 499 U.S. 621, 626-27 (1991). "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson,* 305 F.3d 164, 167 (3d Cir. 2002). However, police may stop and investigate a vehicle if they have "reasonable suspicion" of wrongdoing. *Id.* Police may arrest an occupant of a validly stopped vehicle if they have probable cause to believe that person committed a crime, as exigent circumstances generally excuse the warrant requirement as a result of the "ready mobility" of a vehicle. *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002).

Probable cause is determined by a totality of the circumstances, which must be "sufficient to cause a prudent person to believe that a crime has been committed and the person to be arrested committed it." *Stubbs*, 281 F.3d at 122; *see also Illinois v. Gates*, 462 U.S. 213, 230-31 (1983).

In this case, the totality of the circumstances demonstrates reasonable suspicion to stop the vehicle and probable cause to arrest Defendant. J.H., an eyewitness to the crime, had given police a description of the suspect the day before. She subsequently identified the Defendant in public as the same person, wearing the same clothes. J.H. called the detective on the case and gave a description and the license plate number of the car Defendant had entered, and also followed the car herself. Officer Auty heard this information on his police radio and made the arrest.

At the suppression hearing, Defendant argued specifically that Officer Auty did not have probable cause to arrest him based purely on the information from the police radio. (Tr. at 86.) Defendant also argued more generally in his brief that the police did not collectively have probable cause to arrest him at the time, which this Court interprets as an argument that the radio bulletin itself was based on insufficient information. (Def.'s Mot. to Suppress at 7.) These arguments are without merit.

Police are entitled to act on the strength of a radio bulletin. *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971). However, "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." *Id.*

The evidence reveals that Officer Auty had sufficient probable cause to arrest Defendant. Contrary to Defendant's assertions at the hearing, the usual Fourth Amendment warrant requirement here is waived out of exigency. *Stubbs*, 281 F.3d at 122.

The Third Circuit has upheld arrests based on police radio reports with less information than that received by Officer Auty. For example, the Third Circuit found an officer to be justified in arresting a suspect based on a description over police radio that included "race, height, weight,

color of hair, type of hair styling, as well as the precise color of clothing—dark blue and camel hair." *United States ex rel. Hollman v. Rundle*, 461 F.2d 758, 759 n.1 (3d Cir. 1972) (per curiam). In addition to that description, the defendant in that case "was seen one night later near the scene of the crime, fit one of the descriptions perfectly, and was in the company of a man closely fitting the second description." *Id.* at 759. A transmission via police radio stating that a felony has been committed provides probable cause to believe that the felony has in fact been committed. *United States v. Garraud*, Crim. A. No. 07-427, 2009 WL 1066927, at *3 (E.D. Pa. Apr. 20, 2009).

As in *Rundle*, Officer Auty had a physical description of the suspect via police radio that included height, weight, race, hair color, facial hair, and clothing. In addition, he had a description of the car in which Defendant was riding that included an exact license plate number and the car's location. He also knew that Defendant had been recently identified as an armed robbery suspect by the robbery victim. Officer Auty testified that he confirmed that Defendant's appearance matched the suspect's description first by driving past the Escalade in the opposite direction and seeing Defendant in the front seat, then confirmed the license plate number by turning and driving behind the Escalade before pulling it over. (Tr. at 35-36, 40-41.) Based on what he saw and heard over the police radio, Officer Auty had probable cause to arrest Defendant.

Turning to the facts underlying the radio report, the Court also finds that Detective Andracchio, who gave the report, had probable cause to ask a nearby officer to find and arrest Defendant. In analyzing the totality of the circumstances, the Third Circuit has relied on the following non-exclusive factors from *Johnson* to assess the credibility of an informant's tip:

> (1) the information was provided to the police in a face-to-face interaction, allowing an officer to assess directly the informant's

> credibility; (2) the informant can be held responsible if her allegations are untrue; (3) the information would not be available to the ordinary observer; (4) the informant has recently witnessed the criminal activity at issue; and (5) the witness's information accurately predicts future activity.

*United States v. Elmore*, 548 F. App'x 832, 836 (3d Cir. 2013) (quoting *Johnson*, 592 F.3d at 449).

Here, J.H. witnessed the robbery and described the suspect to the police in a face-to-face interaction shortly thereafter, followed by a written statement given in person to Detective Andracchio. J.H. identified the suspect again the day after the robbery. J.H. also proactively called the police, indicating her willingness to have an ongoing dialogue and to be held accountable for the information she gave them. J.H. gave a specific license plate number and predicted that the police would find a man matching Defendant's description in the car. J.H.'s multiple communications with Detective Andracchio also weigh in favor of her credibility, as her first description of the robber's appearance accurately predicted her second description of the suspect's appearance. The Court therefore finds that Detective Andracchio had probable cause to ask Officer Auty to apprehend Defendant. Defendant's motion to suppress the clothing, shoes, and photograph is therefore denied.

### b. Fifth Amendment Claims

Defendant next argues that both J.H. and E.L. identified him under unduly suggestive circumstances and he moves to suppress those identifications. (Def.'s Mot. to Suppress at 8.) Eyewitness identifications arising from "suggestive and unnecessary" identification procedures implicate the Due Process Clause. *Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012). The first inquiry is therefore whether the procedures used were unnecessarily suggestive. *Thomas v.*

*Varner*, 428 F.3d 491, 503 (3d Cir. 2005); *see also United States v. Brownlee*, 454 F.3d 131, 137-39 (3d Cir. 2006). An impermissibly suggestive identification procedure can occur in four settings: a show-up, a photo array, a line-up, and in court. *Brownlee*, 454 F.3d at 137. Even when impermissibly suggestive procedures are used, however, the identification must only be suppressed if a court finds, on the facts of each case, that "improper police conduct created a substantial likelihood of misidentification." *Perry*, 132 S. Ct. at 724 (quotations omitted). This second inquiry turns on whether "indicators of [a witness'] ability to make an accurate identification are outweighed by the corrupting effect of law enforcement suggestion." *Id.* at 725 (quotations omitted). If witness reliability outweighs the suggestive effect of the procedure, the jury should be allowed to consider the evidence. *Id.* Defendant has the burden of proving that an out-of-court identification arose from unduly suggestive procedures. *United States v. Foote*, 432 F. App'x 151, 154 (3d Cir. 2011); *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003).

### i. Show-Up Identification by J.H.

Defendant contends that the show-up identification by J.H. was unduly suggestive and should be suppressed under the Fifth Amendment, and that J.H. should also not be allowed to identify the Defendant at trial.

"As the Supreme Court has acknowledged, a show-up procedure is inherently suggestive because, by its very nature, it suggests the police think they have caught the perpetrator of the crime." *Brownlee*, 454 F.3d at 138. If a suspect is handcuffed, seated in or pulled out of the back of a police car, surrounded by officers, or the only suspect presented to a witness for identification, those factors will "exacerbate the suggestiveness" of a show-up identification. *Id.*

As most of those factors were true for J.H.'s show-up identification of Defendant in this case, the procedure was unduly suggestive.

The Court's inquiry does not end there, however. The Court finds that the identification does not need to be suppressed because there are sufficient indicia of reliability as to J.H.'s identification of Defendant, outweighing any corrupting effects of the procedure itself. According to *United States v. Biggers*, 409 U.S 188, 199 (1972), the non-exhaustive factors that show reliability are:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation.

*Brownlee*, 454 F.3d at 138 (citing *Biggers*, 409 U.S at 199).

Most importantly, J.H. identified Defendant in public and called the police to arrest him, rather than the police calling J.H. to identify Defendant. It is not clear if this identification qualifies as an unduly suggestive show-up, as a public identification is not one of the four situations in which an impermissibly suggestive identification procedure can occur. *Id.* at 137. Regardless, the Court finds that even if it does consider the identification to be a show-up procedure, the identification does not need to be suppressed because of the reliability of J.H.'s identification.

J.H. testified that she had ample opportunity to observe the robber under non-stressful circumstances while making him a sandwich and taking his payment before the heist. She also testified that the robber was standing approximately two feet away from her and that she observed his face both before and after the robbery. J.H.'s description of the robber accurately describes Defendant. J.H. showed no equivocation in her identification of Defendant as the

robber during the suppression hearing. She was also confident enough with her public identification of Defendant to call Detective Andracchio immediately. The length of time between the crime and the identification—one day—was not extensive. *See Manson v. Brathwaite*, 432 U.S. 98, 115-16 (1977) (considering a passage of two days between the crime and the identification to be not long).

The Court additionally notes that J.H.'s description and identification of Defendant is bolstered by E.L.'s matching description and identification, and the fact that Defendant seemed to be wearing the same clothes on December 2 as J.H. had described him in on December 1.

### ii. *Photo Array*

Lastly, Defendant argues that the photo array identification by E.L. was unduly suggestive and should be suppressed under the Fifth Amendment, and that E.L. should also not be allowed to identify the Defendant at trial.

Photo arrays are among the procedures that may be considered unduly suggestive. *Brownlee*, 454 F.3d at 137. "The suggestiveness of a photographic array depends on several factors, including the size of the array, its manner of presentation, and its contents. If there is no prejudice in the manner of presentation, the primary question is whether the suspect's picture is so different from the rest that it suggests culpability." *Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir. 1991).

An eight-picture photo array, as used here, is sufficient to avoid an inference of unconstitutionality based solely on the size of the array. *See United States v. Depass*, Crim. A. No. 09-686, 2010 WL 3239178, at *4 (E.D. Pa. Aug. 13, 2010).

Defendant has not objected to the manner of presentation of the photo array, or claimed that the police said or did anything to emphasize his photograph over the others while E.L. was

considering the array. Detective Flacco additionally testified that he presented the array in a non-suggestive manner.

Defendant's main objections to the photo array are that his photo is lighter than the others, and that he is the only one in the array wearing a collared shirt. (Def.'s Mot. to Suppress at 13-14.) Slight differences in the appearance of a defendant compared with other individuals in a photo array are not fatal to the suggestiveness of an array. For example, the Third Circuit has affirmed the use of a photo array in which the defendant was the only one depicted in light-colored clothing, and the only one with "parted hair and comparatively thick braids or dreadlocks in the front or side of the head." *Green*, 543 F. App'x at 268. Similarly, the Third Circuit has found no issue with arrays in which the defendant complained that he was the only one wearing a red shirt and that the others pictured were "of noticeably different builds and skin hues." *Dowling*, 855 F.2d at 117. The Third Circuit instead affirmed the district court's finding that the arrays were not suggestive because some of the other photographs portrayed men wearing colored shirts and because the men portrayed "were reasonably comparable in dress and appearance." *Id.* Even an array in which the police displayed a defendant's personal photo next to only "mug shots," where defendant was the only one wearing jewelry and not wearing a shirt, was upheld as not unduly suggestive on appeal. *Lawrence*, 349 F.3d at 116.

The Court has examined the photo array in question and finds that it is not unduly suggestive. The differences to which Defendant objects are slight. The lightness of Defendant's photograph is within the range of variation of all the photographs, some of which are darker than others. The Government points out correctly that there is also some variation in the necklines of the shirts in the other photographs, such that Defendant's collared shirt does not stand out. In

sum, Defendant's picture is not "so different from the rest that it suggests culpability." *Reese*, 946 F.2d at 260.

**IV.     CONCLUSION**

For the foregoing reasons, the Court holds that the tangible evidence and photograph arising from Defendant's December 2, 2012 arrest were not obtained in violation of the Fourth Amendment. The Court additionally holds that the out-of-court identifications of Defendant by J.H. and E.L. were not obtained in violation of the Fifth Amendment. Accordingly, Defendant's Motion to Suppress is denied. An Order consistent with this memorandum will be docketed separately.